FILED

2017 Jan-30  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **THERA HAMILTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:14-cv-02008-AKK** |
| **MIDLAND FUNDING LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Thera Hamilton brings this action against Midland Funding, LLC and Midland Credit Management, Inc. (collectively "Midland"), alleging claims under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1692, *et seq*., and Alabama common law. Hamilton contends that Midland filed a purportedly baseless collections suit against her for a debt she contends she either did not owe or was time-barred. Doc. 1. Midland has moved for summary judgment, doc. 35, and its motion is fully briefed and ripe for review. Docs. 38, 47, 49. For the reasons below, Midland's motion is due to be granted.

## I.     SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[]

1

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere

conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

### III. FACTUAL ALLEGATIONS

Midland is a purchaser of debt other creditors have charged off[1] and works with the debt sellers to request and obtain information that will support its attempts to subsequently collect the debts. Once it has this information, Midland sends the accounts to its various law firms to file collection suits on its behalf. *See generally* doc. 40-10. Midland requires its law firms to know the evidentiary and procedural rules in the states in which they operate, and law firms are responsible for "the accuracy of information within the suit (and affidavits), . . . [including] accurate statements of amounts due (principal and interest). . . ." Doc. 40-10 at 20–21. To assist the law firms in prosecuting these suits, Midland maintains a document portal, in which media "is either available for immediate download or available for

---

[1] A "charge off" occurs when a creditor determines it is unlikely to collect a debt and closes the account to further use. Because the debt is still owed, a charged off account may still be reflected on a credit report.

Firm request." Doc. 40-10 at 27. Midland also has procedures by which a law firm may request a "live witness," if necessary. Doc. 40-10 at 21.

In 2005, Hamilton opened a credit card account at Circuit City through Chase Bank USA, N.A.[2] Doc. 40-1 at 20 (Hamilton stating: "I do recall opening the account."). Hamilton made periodic payments on this account until April 2009. *See generally* docs. 40-3 *and* 40-8; *see also* doc. 40-1 at 20 (Hamilton stating: "I made payments on my Circuit City account."). When Hamilton ceased making payments, the account had a balance of $2,334.61, but due to accumulated late fees, the balance reached $2,960.10 by December 2009. Doc. 40-3 at 12, 19. Chase charged off the debt on December 31, 2009. *Id.* at 19 (notation on credit card statement that the outstanding balance was scheduled to be written off as a bad debt).

In July 2011, Midland purchased a pool of charged-off accounts from Chase, including Hamilton's account. Docs. 40-4; 40-7 at 47–52. Thereafter, Midland placed Hamilton's account with Holloway and Moxley, LLP, an Alabama law firm, for collection. As a result, on April 10, 2014, the law firm filed suit in Jefferson County Small Claims Court to recover the full amount due on the Chase account. Doc. 48-6.

---

[2] Chase later converted this account to a Best Buy account in 2014. Doc. 40-1 at 27.

4

In Hamilton's answer, she denied responsibility for the debt claiming that she "never had an account with Midland Funding, LLC." Doc. 40-9. As a result, Holloway and Moxley sent Hamilton the Chase account number to clarify the debt at issue and to provide her with the opportunity to enter into a consent judgment. Doc. 40-7 at 60–61. Holloway and Moxley also included the relevant Chase account statements, as well as an affidavit from a Midland employee explaining that Midland purchased the charged-off account from Chase. Doc. 40-7 at 60–77. When Hamilton declined to sign a consent judgment, the case proceeded to trial, where Holloway and Moxley presented the affidavit of a Midland employee, chain-of-title documentation, and Hamilton's monthly Chase account statements in support of their case. Doc. 40-7 at 6 (stating that they did not present a live witness because "Small Claims Rule J permits that Court to accept affidavit testimony in the place of live witness testimony."). The court ruled in Hamilton's favor. Doc. 40-11.

Hamilton subsequently filed this current lawsuit, in which she pleads nine counts challenging Midland's decision to file the collection suit against her. The court addresses these claims, beginning with subsection A with Count I, which pleads violations of section 1692d of the FDCPA. Next, in subsection B, the court addresses Counts II–VI, which plead violations of sections 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10). Finally, in subsection C, the court will address

Count XII, Hamilton's remaining state law claim of malicious prosecution. *See* docs. 47 at 30 n. 18 (stating that she is abandoning her claims for negligent hiring and wanton and malicious conduct); 21 (August 21, 2015 Order disposing of counts VII, VIII, and IX).

## IV. ANALYSIS

Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute is "remedial . . .  and its provisions are to be liberally construed in favor of consumer debtors," *Bandy v. Midland Funding LLC,* 2013 WL 210730, * 5 (S.D. Ala. Jan. 18, 2013) (citing *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002); *Mammen v. Bronson & Migliaccio, LLP,* 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009)), utilizing the "least sophisticated consumer" standard, *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1174–75 (11th Cir. 1985). With these principles in mind, the court turns to Hamilton's contentions below.

A. *Alleged Violation of 15 U.S.C. § 1692d (Count I)*

Hamilton alleges that Midland violated § 1692d of the FDCPA when it filed its collection suit because "without ownership [of the debt], the [underlying] lawsuit is baseless and 1692d has been violated." Doc. 47 at 17. The FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.[3] By Hamilton's own contention, Midland's filing of the collection lawsuit is the harassing and oppressing behavior. However, "the filing of a lawsuit does not have the natural consequence of harassing or oppressing a debtor," *Milkjovic v. Shafritz and Dinkin, P.A.,* 791 F.3d 1291, 1305 (11th Cir. 2015), and, without more, "the filing of a lawsuit is not within the scope of prohibited activities that § 1692d contemplates," *Pack v. Unifund CCR Partners, G.P.,* 2008 WL 686800 (M.D. Fla. Mar. 13, 2008).

---

[3] The statute also proscribes the following actions:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity

15 U.S.C. § 1692d(1)–(6).

Moreover, a review of the record shows that Midland, in fact, owned the debt. Specifically, Midland alleged in its complaint that it was the successor in interest to Chase's interests in Hamilton's credit card debt. After Hamilton answered and denied the debt, doc. 40-9, Midland's attorneys provided Hamilton with a Bill of Sale, Chase Bank Affidavit of Sale, and Hamilton's Chase account statements. Doc. 40-7 at 6. The documents established Midland's ownership as follows: (1) the Bill of Sale stated in relevant part that Chase "assigns effective as of the File Creation Date of 07/21/2011 all rights, title and interest of Seller in and to those certain receivables, judgments, or evidence s of debt described in the Final Data File . . .", doc. 40-7 at 49–50; (2) the Chase Affidavit of Sale authenticated the transfer of the account numbers and indicated that Chase maintained the electronic records in the regular course of business, doc. 40-7 at 64; and (3) the account statements traced Hamilton's debt obligation to Chase, doc. 40-7 at 9–45. Moreover, Midland presented the affidavit of one of its employees showing that Chase assigned Midland the rights, title and interest of Hamilton's account through the Bill of Sale and listed the amount that remained due on the account. Doc. 40-7 at 57–58. In addition to these documents, a data printout from the purchased Chase electronic records indicating Hamilton's credit account number and the full amount of the debt due supported Midland's contention. Doc. 40-7 at 66.

These documents belie Hamilton's contention that Midland filed a frivolous lawsuit. In fact, there is nothing in this record to support the contention that Midland filed false affidavits or knowingly made false statements when it filed the lawsuit. As another court faced with a similar lawsuit against Midland stated, "[w]ithout more, Midland's filing and prosecution of its state court collection lawsuit without possessing or obtaining evidence to prove its claims does not rise to an FDCPA violation." *Bandy*, 2013 WL 210730 at * 9; *see also Samuels v. Midland Funding, LLC,* 921 F. Supp. 2d 1321, 1328–1333 (S.D. Ala. 2013) (discussing the supporting evidence a creditor can attach to a complaint to prove its claim). Therefore, Midland's motion for summary judgment is due to be granted on this claim.

### B. Alleged Violations of 15 U.S.C. § 1692e (Counts II–VI)

Hamilton contends that Midland violated various provisions of § 1692e when it falsely represented that Hamilton owned the debt and attempted to collect a debt that it purportedly did not own.[4] Doc. 44 at 14–15. In support of this contention, Hamilton argues that Midland's failure to produce the Purchase and

---

[4] The Complaint also alleged that Midland filed its collection suit in spite of the fact that the debt was time-barred. Doc. 1 at 8–10. The statute of limitations on accounts stated and actions for breach of contract in Alabama is six (6) years. Ala. Code § 6-2-34 (1975); *see also Cook v. Midland Funding, LLC*, 2016 WL 2817086, *4 (Ala. Civ. App. May 13, 2016). The record shows that the last payment on Hamilton's Chase account was April 2009. Doc. 40-3 at 12. Accordingly, because Midland filed the collection suit in April 2014, which is within the six year statute of limitations period, doc. 48-6, the lawsuit is timely.

Sale Agreement (PSA) and the judgment in her favor in state court demonstrate that Midland did not own the debt. Doc. 44 at 21–22. For the reasons below, this argument is unpersuasive.

The FDCPA prohibits a debt collector from "us[ing] any false deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the false representation of the . . . legal status of any debt," *id.* § 1692e(2)(A). Communications are misleading if they "erroneously state the amount of the debt owed . . . [or] incorrectly identify the holder of the alleged debt." *Miljkovic,* 791 F.3d at 1306. Once a debt collector has made a claim or requested collection, upon request by the alleged debtor, the creditor is required to provide "verification" of the debt, i.e., the chain of title and any account statements that would provide the alleged debtor with enough information that they can identify the debt. 15 U.S.C. §1692g(a). Midland fully complied with these provisions. As discussed above, once Hamilton answered the state court action, Midland sent Hamilton a letter containing a Bill of Sale, a Chase Bank Affidavit of Sale, and Hamilton's Chase account statements. Doc. 40-7 at 6. Critically, the Chase account at issue is one Hamilton admits she opened, doc. 40-1 at 20, and the record shows that Hamilton owed $2,960.10 on the account when Chase charged it off. Doc. 40-3 at 19. This is the specific amount that Midland sought to recover in its collection suit. Doc. 48-6.

Although Hamilton does not dispute that she owned the account or that it had a past due balance that matched the amount Midland sought to collect, she argues nonetheless that the state court judgment in her favor means that Midland did not have a legal right to the debt. Consequently, she contends that Midland's suit was false and/or misleading in violation of § 1692e(2). Doc. 47 at 29. This argument is unavailing because, first, "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 330 (6th Cir. 2006); *see also Gonzalez v. Erskine*, 2008 WL 6822207, *3 (S.D. Fla. Aug. 7, 2008) (Debt collector's "act of filing a lawsuit, with evidentiary support, is consistent with the purpose of the FDCPA . . ."); *Deere v. Javitch, Block, and Rathbone, LLP,* 413 F. Supp. 2d 886, 890 (S.D. Ohio 2006) (Filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt, is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable. A defendant in any lawsuit is entitled to request more information and details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery.").

11

Second, the judgment in Hamilton's favor does not establish a violation of the FDCPA.[5] *See* doc. 48-8. As the Supreme Court has stated, "we do not see how the fact that a lawsuit turns out to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Heintz v. Jenkins,* 514 U.S. 291, 296 (1995); *see also Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, *9 (N.D. Ill. Feb. 18, 2009) ("Losing or voluntarily dismissing a collection case does not by itself create an FDCPA claim against the creditor and its attorneys. Filing a lawsuit is an authorized method of collecting a debt."). Put simply, no legal basis exists for the contention that losing a collections suit in state court means that the debt collector had no legal basis to file the suit or that it is automatically exposed to FDCPA liability.

Finally, Hamilton's reliance on *Prince v. LVNV Funding* for the contention that Midland needed to prove ownership through a PSA is misplaced. In that case, in addition to failing to provide a PSA in the state court action, the defendants also failed to show *any* evidence that it had purchased the debt or evidence that the plaintiff had, in fact, incurred the debt. 2014 WL 3361912 at *10 (M.D. Ala. 2014) *vacated per stipulation by* 2014 WL 7506753. By contrast here, Midland produced the complete bill of sale evidencing its purchase of the debt, statements from Chase

---

[5] In fact, there is nothing before the court to help it decipher what factors the state judge weighed in finding for Hamilton. The judgment states only: "This case came before the court for trial on this date. Judgment on trial is hereby entered in favor of Defendant and against Plaintiff. Court costs are taxed to Plaintiff." Doc. 48-8.

to Hamilton indicating the amount owed, and Hamilton has admitted that she opened and made payments on the Chase account at issue. *See* docs. 40-3 *and* 40-8; 40-1 at 20.

In short, because the record shows that Midland presented evidence in the state court action that supported its contention that it owned Hamilton's debt, and the record is devoid of any evidence that Midland made false statements or filed false affidavits, Hamilton has failed to establish a violation of 15 U.S.C. 1692e and Midland's motion is due to be granted on Counts II–VI.[6]

### C. Alleged Malicious Prosecution (Count XII)

Hamilton contends that Midland violated Alabama law by maliciously prosecuting her in light of its failure to produce a PSA to establish ownership of the debt. A malicious prosecution claim requires that Hamilton prove (1) a judicial proceeding initiated by Midland, (2) the lack of probable cause, (3) malice, (4) termination in Hamilton's favor, and (5) damages. *See, e.g., Cutts v. American United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987). "The question is not

---

[6] Hamilton also alleges that Midland violated 15 U.S.C. § 1692e(8), which provides that a debt collector may not "communicat[e] or threaten[] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" and § 1692e(5), which provides that a debt collector may not threaten "to take any action that cannot legally be taken or that is not intended to be   taken." However, nothing in the record supports either contention because the evidence demonstrates that Midland had probable cause to file its lawsuit. Again, the FDCPA does not prohibit a creditor from filing a collection suit, and losing such a suit is not automatic grounds for finding an FDCPA violation. Furthermore, once Hamilton prevailed in the collection suit, Midland ceased reporting the debt to credit agencies. Doc. 40-5 at 39.

whether the . . . plaintiff [claiming malicious prosecution] was guilty of the thing charged, but whether the . . . defendant acted in good faith on the appearance of things." *Edison v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988). For purposes of a malicious prosecution claim, "the element of malice may be inferred from the lack of probable cause . . ." *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1107 (Ala. 2000) (internal citations omitted). However, "[f]or purposes of summary judgment, the . . . [plaintiff's] burden of proof may be stated as follows: *If there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action . . . against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate*." *Willis v. Parker*, 814 So. 2d 857, 863 (Ala. 2001) (internal citations omitted) (emphasis original). Again, here, Midland had probable cause because it produced documents attesting to its ownership of Hamilton's debt—i.e., the Bill of Sale, the closing statement, the affidavit from Chase indicating that it had sold a pool of charged off assets to Midland, and electronic records indicating that Hamilton had incurred a debt from Chase. *See* doc. 40-7 at 47, 49–52. Because Hamilton cannot establish that Midland lacked probable cause to bring its suit, she cannot succeed on her malicious prosecution claim, and summary judgment is due to be granted on Count XII.

## V. CONCLUSION

For the foregoing reasons, Midland's motion for summary judgment is due to be granted. In light of this, Midland's Motion to Strike Doc. 45-5, doc. 50, is termed as **MOOT**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 30th day of January, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE